**Exhibit A**

Case 2:11-cv-01540-SDW -MCA   Document 1-1   Filed 03/18/11   Page 1 of 16 PageID: 7

VINCENT J. D'ELIA, Esquire
574 Newark Avenue
Jersey City, New Jersey 07306
(201) 656-6503
Attorney for Plaintiff Tyler Hodson

-------------------------------------X
TYLER HODSON and ERIC MCGUIRL
    Plaintiffs,

  -vs-

AL ROKER ENTERTAINMENT, INC.; SPIKE TV; CABLE TV SHOW TITLED "DEA"; FILM AND SOUND CREW MEMBERS; INDIVIDUALLY AND THE ENTITY, CORPORATION OR COMPANY BY WHICH THEY WERE EMPLOYED OR HIRED; THE CITY OF JERSEY CITY; JERSEY CITY POLICE DEPARTMENT; DRUG ENFORCEMENT AGENCY; DETECTIVE S. SANTANA, Jr.; TFO BRIAN GREENE; JOHN AND JANE DOES, MEMBERS OF LAW ENFORCEMENT; JOHN AND JANE DOES, INDIVIDUALLY; and OTHER LAW ENFOREMENT AGENCY OR MEMBER WHOSE IDENTITIES ARE NOT PRESENTY KNOWN

    Defendants.
-------------------------------------X

SUPERIOR COURT OF NEW JERSEY
HUDSON COUNTY- LAW DIVISION

CIVIL ACTION

Docket No. HUD-L- 640-11

COMPLAINT and JURY DEMAND

[FILED JAN 3 1 2011 SUPERIOR COURT OF NEW JERSEY COUNTY OF HUDSON CIVIL DIVISION #5 CUSTOMER SERVICE TEAM]

[RECEIVED JAN 3 1 2011 SUPERIOR COURT OF NJ COUNTY OF HUDSON]

TYLER HODSON, residing at 86A Bowers Street, Jersey City, New Jersey, and Eric McGuirl, residing at 1210 Hudson Street, Hoboken, New Jersey, (individually, Plaintiff, and collectively Plaintiffs) by way of Complaint against Defendants Al Roker Entertainment, Inc.,

1

SPIKE TV; Cable TV show "DEA"; ABC, Inc. or Co., a fictitious name for any entity hired to film, video, record, prepare, oversee, manage, distribute or air said show including any likeness or information involving Plaintiff; John Does and Jane Does, fictitious names for the individuals who were involved in any of said activities (hereinafter collectively referred to as "Film Defendants"); The City of Jersey City, the Police Department for the City of Jersey City, and the Drug Enforcement Agency of the Federal Government, and individuals whose names are known to Plaintiff, including Detective S. Santana, Jr. and Task Force Officer Brian Greene, and others involved with said agencies or companies and whose identities are not presently known to Plaintiff, hereby states that:

1. On a date or dates on, before or after January 29, 2009 and/or March 6, 2009 Defendants, acting together and separately, in locations in Hudson County, New Jersey, including 253 Ogden Avenue, Jersey City, New Jersey, a two family house, ("the premises") and elsewhere, made certain observations and filmed, videoed and recorded certain events relating to Plaintiff purportedly in relationship to an actual law enforcement activity and for a cable television show named DEA, which was and is owned, produced and/or overseen by Al Roker Entertainment, Inc. and which show was broadcast on SPIKE TV.

2. Plaintiff does not know the identity of each entity or person who was or is involved or responsible for all facets of the actions taken related to Plaintiff or the production and airing of said television show, and preserves any claim regarding such activities against said entities and individuals by naming ABC Inc., ABC, Co and John or Jane Does as Defendants using said fictitious names herein.

3. Plaintiff has requested from Defendants the Jersey City Police Department (hereinafter "JCPD"), the Drug Enforcement Agency (hereinafter "DEA") and from Al Roker

2

Entertainment, Inc. information, documents and reports regarding the activities which led Defendants to be at the premises on January 29 and March 6, 2009, and the activities that took place on said dates, received some documents prepared but has not received much of the information and documents requested.

4. The Jersey City Police Department (hereinafter "JCPD") and/or the Drug Enforcement Agency (hereinafter "DEA") claimed they acquired information about Plaintiff which resulted in Defendants going to the premises on January 29, 2009. However, Defendants deny that they entered the premises on March 6, 2009.

5. The information allegedly received by law enforcement Defendants regarding Plaintiff prior to their going to the premises on January 29, 2009, was among other things, not from a reliable source, the reliability had not been verified, was not based on a registered informant, did not include any specific information of any illegal transaction between Plaintiff and any named person, did not provide a reasonable basis to believe that Plaintiff had committed a crime or was in possession of any illegal contraband or item.

6. No law enforcement member, including any Defendant, attempted to obtain a search warrant or arrest warrant for Plaintiff.

7. No Defendant obtained an arrest warrant or search warrant at any time regarding Plaintiff.

8. No Defendant conducted a surveillance of the premises prior to Defendants going to the premises on January 29, 2009.

9. Law enforcement Defendants knew or should have known that no exigent circumstances existed to go to Plaintiff's residence without either an arrest or search warrant.

3

10. For the time period that Defendant law enforcement were outside the premises they did not observe any activity that established a basis to believe exigent circumstances existed such that there was not time to obtain a search warrant or arrest warrant.

11. Law enforcement Defendants had no information or factual basis to believe that Plaintiff was a flight risk or that any person was in danger such that there was insufficient time to apply for a search warrant or an arrest warrant.

12. No Defendant observed any criminal act by Plaintiff prior to Defendants going to the premises on January 29, 2009; nor did any Defendant or member of law enforcement observe any criminal act by Plaintiff while waiting at the premises or upon being on the front steps of the premises where Plaintiff was handcuffed and arrested.

13. Without a finding having been made by a judge that probable cause existed to arrest Plaintiff, or to enter, search or seize anything from within Plaintiff's apartment on the second floor of 253 Ogden Avenue, and without having received the approval of any member of law enforcement prior to Defendants arriving at the premises, that law enforcement or anyone else, was authorized to enter and conduct a search or seizure of the premises and/or Plaintiff's apartment, Defendants, including law enforcement defendants and those involved in the filming and recording of events, did, on January 29, 2009, enter the premises, walk up the flight of stairs and enter Plaintiff's apartment without a search warrant for the premises, without an arrest warrant for anyone in the premises, and without the permission or authority of any of the three residents of the apartment.

14. Law enforcement Defendants placed Plaintiff in handcuffs while he was outside the premises on the front steps.

4

15. Defendants did not observe Plaintiff commit any illegal act while he was outside the premises.

16. Defendants did they obtain any illegal substance or item on Plaintiff's person prior to or after placing Plaintiff in custody.

17. Defendants handcuffed Plaintiff on the outside stairs of the premises and brought Plaintiff upstairs.

18. Defendants, without Plaintiff's consent and without proper cause, opened the entrance to Plaintiff's apartment, conducted a search of each room and removed items from the apartment, some of which belonged to Plaintiff and to the other residents.

19. Defendant film crew, consisting of at least three people, including a person who later identified himself as a producer, filmed and recorded outside the premises, entered the building, walked up the stairs and entered Plaintiff's apartment also filming, without any authorization or permission from Plaintiff.

20. While in Plaintiff's apartment the producer told Plaintiff he was not a member of law enforcement, that he was the producer of a television show and, while the crew continued to film and record, the producer stated that Plaintiff was already under arrest and he wanted Plaintiff to sign a document that would not allow anyone to broadcast Plaintiff's likeness, face, body, and voice; that all would be blurred and even wrote such items on the back of the document.

21. Defendants law enforcement and film crew, acting in concert, and after Plaintiff said many times that he did not want to sign anything without an attorney, was told that without Plaintiff's signature, and because he was under arrest, they could display Plaintiff's face and voice without being blurred, on national television. The producer assured Plaintiff that, if he signed the document with all the entries on the back that the producer had handwritten stating

5

that Plaintiff's face, body and voice would be blurred, and a member of law enforcement also assuring Plaintiff of the same, Plaintiff signed the document.

22. Defendants swore to Plaintiff that signing the document could only benefit him in that it would not have his image shown on television.

23. Defendants while continuing to keep Plaintiff restrained in handcuffs, interrogated him, and another resident of the apartment who was also handcuffed by Defendants and required to lay on his stomach on the floor of the apartment for an extended period of time before being released by Defendants.

24. Law enforcement Defendants removed property belonging to the residents of the apartment without permission or authority to do so.

25. Without Plaintiff's consent or his authority, law enforcement Defendants took from Plaintiff's possession inside his apartment, Plaintiff's keys to the motor vehicle that he owned, which was properly insured and registered, and was lawfully parked outside the premises.

26. Defendants, without permission or authority of Plaintiff, searched said motor vehicle and took into their possession items from said motor vehicle. Defendants, without Plaintiff's permission or authority seized said motor vehicle and removed in to an undisclosed area

27. Instead of taking said vehicle to a proper facility of the Jersey City Police 29. Department, City of Jersey City, or DEA facility, or some other proper Federal Government facility, law enforcement Defendants drove Plaintiff's motor vehicle into Essex County, deliberately failing to pay a toll at Lane 13W at I-280/Newark/The Oranges, and choosing to use an E-ZPass lane, incurred an expense which resulted in the issuance of a Notice of Enforcement Action by the New Jersey Turnpike assessing an administrative fee and toll against Plaintiff.

6

28. Defendants never reimbursed Plaintiff for this "summons", the expense; and never notified the State of New Jersey that the violation was committed by Defendants and not by Plaintiff.

29. Defendants did not immediately secure the motor vehicle in a proper facility, maintain the proper chain of custody of the vehicle and items seized, and perform their duties related to their activities.

30. Instead, without permission or authority from Plaintiff, or from their superiors at the Jersey City Police Department or DEA, Defendants, based upon information and belief, took Plaintiff's motor vehicle to an unauthorized location, parked it at a restaurant where Defendants dined in part, as a celebration of their activities.

31. Plaintiff was removed from his apartment, remained in handcuffs, taken to a police facility, housed in a detention cell, charged with crimes and then taken to the county correctional facility.

32. Plaintiff remained in jail for nine days until he was released only after posting bail.

33. Prior to going to the County facility, and approximately two hours after the police placed Plaintiff in the cell in Jersey City, Detective Santana entered the cell on more than one occasion and obtained signatures by Plaintiff on forms by misrepresenting to Plaintiff the use and purpose of the forms.

34. On March 6, 2009, a larger contingent of law enforcement Defendants each wearing some form of jacket or hat, or both, bearing a law enforcement insignia, many with DEA lettering, in contrast to the attire worn on January 29, 2009, which consisted of all plain clothes until uniform officers came later, appeared, unannounced, at the premises.

35. Defendants, both law enforcement and filming personnel, knowing that Plaintiff was represented by counsel and failing to notify Plaintiff's counsel, again entered Plaintiff's residence without permission or authority in the presence of Plaintiff and Eric McGuirl, who was also ordered to stay in the apartment and told him to sit down and that he could not leave.

36. When law enforcement Defendants asked if they could come in, Plaintiff said no; that they were not going to trick him again.

37. On March 6, 2009, and notwithstanding Plaintiff's protestations, and that Defendants had no search warrant or arrest warrant, Defendants entered the premises downstairs, hand cuffed Plaintiff, who was yelling that they had no warrant and no right to enter the premises or his apartment; took him, in custody, into his apartment, without permission or authority, ignored Plaintiff's request and demand to be left alone, and conducted a search with the intent to seize property. No illegal item was found on the person or in the apartment and no arrest was made.

38. This incident was observed by both landlords who were outside the premises sweeping.

39. Plaintiff was forced to remain handcuffed in his apartment while additional Defendants pulled up in more motor vehicles and entered the premises and his apartment, all attired with some identifying law enforcement marking, including most wearing a DEA labeled item.

40. Defendants' film crew and law enforcement were in Plaintiff's apartment for approximately 10-15 minutes interrogating Plaintiff while the filming continued.

41. No Defendant was given permission to enter or remain in Plaintiff's residence.

42. Law enforcement again searched Plaintiff's residence entering and searching in multiple rooms, including Plaintiff's bed room.

8

43. Defendants were aware that there was no search warrant, arrest warrant, or proper authority to be in the premises or Plaintiff's apartment on March 6, 2009, and to restrain, handcuff or interrogate Plaintiff was not a proper performance of law enforcement duties.

44. At no time did film Defendants report to the Attorney General's Office or any independent agency or law enforcement agency any of the actions of law enforcement Defendants that took place on March 6, 2009.

45. Defendants did not have a proper basis to enter or search the apartment.

46. Defendants did not have a proper basis to restrain, detain, or hold Plaintiff on March 6, 2009.

47. Film Defendants did not have a signed authorization by Plaintiff to be in his apartment, to remain in his apartment, film or record him or his apartment or roommate Eric McGuirl.

48. Film Defendants showed, on national television, film taken of Eric McGuirl on January 29, 2009, without obtaining a signed release of him, without blurring his face.

49. All Defendants involved in the entry of the premises on March 6, 2009, knew or should have known that said entry and activities therein were not based upon a legitimate law enforcement purpose; and were an intrusion to Plaintiff's privacy; and constituted a trespass.

50. The actions by Defendants were intentional, constitute malice, and deserve a finding of punitive damages.

51. The Court should enter a declaratory judgment that, based upon the conduct of law enforcement Defendants, and civil forfeiture of any property or money be denied, or reversed, and said property returned to Plaintiff.

9

52. Defendants' actions violated Plaintiff's constitutional rights under Title 42 Sections 1983, and Plaintiff seeks counsel fees pursuant to Title 42 Section 1985.

53. Defendants' actions constitute a conspiracy by Defendants to violate Plaintiff's rights by Defendants' conduct on January 29, 2009 and March 6, 2009, and participating in a cover up of the actions on March 6, 2009; by secreting documents; possibly destroying documents; failing to produce documents; and failing to properly perform law enforcement activities pursuant to statutes and guidelines established by the Federal Government, State of New Jersey, Prosecutor's Office, and local law enforcement agencies.

54. The actions of all involved in the incident on March 6, 2009, among other things, violated Plaintiff's right to privacy, to enjoy the use of his home undisturbed by others, to be free from trespass, assault and battery, to not be detained against his will, to not be subjected to a re-enactment of an arrest for the possible benefit of deriving money from the potential publication and distribution of Plaintiff's likeness, features, voice and viewing of his home, apartment, possessions and even his very identifiable dog, Vega.

55. Law enforcement Defendants, knowing that Plaintiff was represented by counsel, violated his Fifth and Sixth Amendment rights by interrogating him in a false arrest, without providing him with his warnings pursuant to Miranda v. Arizona, or contacting his attorney.

56. Actions of Defendants on March 6, 2009, were not in the proper performance of their duties, were a violation of oaths they take as law enforcement and were performed for the purpose of filming an arrest for the TV show.

57. In all the discovery the State claims it has there is not report that anyone observed Plaintiff selling, or in possession of marijuana; and no one made any observations in Plaintiff's

10

home of any illegal activity or of any weapon used or possessed by Plaintiff, prior to January 29, 2009.

## FIRST COUNT

58. Plaintiffs repeat and re-allege each fact set forth in the above paragraphs as if fully set forth herein.

59. The actions by Defendants violate United States Code Title 42 Section 1983.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, plus interest, punitive damages, all costs and counsel fees.

## SECOND COUNT

60. Plaintiffs repeat and re-alleges each fact set forth in the above paragraphs as if fully set forth herein.

61. Defendants' conduct constitutes trespass and harassment of Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, plus interest, punitive damages, all costs and counsel fees.

## THIRD COUNT

62. Plaintiff repeats and re-alleges each fact set forth in the above paragraphs as if fully set forth herein.

63. Defendants actions constitute false imprisonment.

WHEREFORE, Plaintiffs demand judgment against defendants for compensatory damages, plus interest, punitive damages, all costs and counsel fees.

11

## FOURTH COUNT

64. Plaintiffs repeat and re-allege each fact set forth in the above paragraphs as if fully set forth herein.

65. The actions of Law enforcement Defendants constitute an assault upon Plaintiffs and a battery upon Plaintiffs.

WHEREFORE, Plaintiffs demand compensatory damages, punitive damages, interest, attorney's fees and costs of suit.

## FIFTH COUNT

66. Plaintiffs repeat and re-allege each fact set forth in the above paragraphs as if fully set forth herein.

67. The actions of Law enforcement Defendants constitute an unlawful detention of Plaintiffs.

WHEREFORE, Plaintiffs demand compensatory damages, punitive damages, interest, attorney's fees and costs of suit.

## SIXTH COUNT

68. Plaintiffs repeat and re-allege each fact set forth in the above paragraphs as if fully set forth herein.

69. Actions by law enforcement Defendants constitute a tort.

WHEREFORE, Plaintiffs demand compensatory damages, interest, attorney's fees and costs of suit.

12

*/s/ Vincent J. D'Elia*
VINCENT J. D'ELIA

Dated: January 28, 2011

## JURY DEMAND

Plaintiffs demand trial by jury as to all issues.

*/s/ Vincent J. D'Elia*
VINCENT J. D'ELIA

Dated: January 28, 2011

## CERTIFICATION

Pursuant to Rule 4:5-1, the undersigned certifies that there is no other action pending in any Court or arbitration proceeding, nor is such a proceeding contemplated except the criminal proceedings referenced to herein which are pending in Hudson County against Plaintiff; and there are presently no other parties who should be joined in this cause of action.

*/s/ Vincent J. D'Elia*
VINCENT J. D'ELIA

Dated: January 28, 2011

## DESIGNATION OF TRIAL COUNSEL

PLEASE BE NOTIFIED that, pursuant to Rule 4:25-4, VINCENT J. D'ELIA, is hereby designated as trial counsel in the above referenced litigation.

*/s/ Vincent J. D'Elia*
VINCENT J. D'ELIA

Dated: January 28, 2011

13

Appendix XII-B1

## CIVIL CASE INFORMATION STATEMENT (CIS)

Use for initial Law Division Civil Part pleadings (not motions) under *Rule* 4:5-1
Pleading will be rejected for filing, under *Rule* 1:5-6(c), if information above the black bar is not completed or attorney's signature is not affixed

**FOR USE BY CLERK'S OFFICE ONLY**
PAYMENT TYPE: ☐ CK ☐ CG ☐ CA
CHG/CK NO.
AMOUNT:
OVERPAYMENT:
BATCH NUMBER:

| Field | Value |
|---|---|
| ATTORNEY/PRO SE NAME | Vincent J. D'Elia |
| TELEPHONE NUMBER | 201-656-6507 |
| COUNTY OF VENUE | Hudson |
| FIRM NAME (if applicable) | |
| DOCKET NUMBER (when available) | |
| OFFICE ADDRESS | 574 Newark Avenue, Jersey City, N.J. 07306 |
| DOCUMENT TYPE | |
| JURY DEMAND | ☒ Yes ☐ No |
| NAME OF PARTY (e.g., John Doe, Plaintiff) | Tyler Hudson, Eric McGuirl |
| CAPTION | Hudson vs Al Roker Entertainment |
| CASE TYPE NUMBER (See reverse side for listing) | 005 etc. |
| IS THIS A PROFESSIONAL MALPRACTICE CASE? | ☐ YES ☐ NO |

IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT.

| Field | Value |
|---|---|
| RELATED CASES PENDING? | ☐ Yes ☒ No |
| IF YES, LIST DOCKET NUMBERS | |
| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? | ☒ Yes ☐ No |
| NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known) | ☐ None ☐ Unknown |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? | IF YES, IS THAT RELATIONSHIP: |
|---|---|
| ☐ Yes ☒ No | ☐ EMPLOYER/EMPLOYEE ☐ FRIEND/NEIGHBOR ☐ OTHER (explain) ☐ FAMILIAL ☐ BUSINESS |

DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?  ☐ Yes ☐ No

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| ☐ Yes ☒ No | |
| WILL AN INTERPRETER BE NEEDED? | IF YES, FOR WHAT LANGUAGE? |
| ☐ Yes ☒ No | |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE: /s/

Effective 01/03/2011, CN 10517-English                                                    page 1 of 2



**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under Rule 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I - 150 days' discovery
- 151 NAME CHANGE
- 175 FORFEITURE
- 302 TENANCY
- 399 REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
- 502 BOOK ACCOUNT (debt collection matters only)
- 505 OTHER INSURANCE CLAIM (including declaratory judgment actions)
- 506 PIP COVERAGE
- 510 UM or UIM CLAIM (coverage issues only)
- 511 ACTION ON NEGOTIABLE INSTRUMENT
- 512 LEMON LAW
- 801 SUMMARY ACTION
- 802 OPEN PUBLIC RECORDS ACT (summary action)
- 999 OTHER (briefly describe nature of action)

### Track II - 300 days' discovery
- 305 CONSTRUCTION
- 509 EMPLOYMENT (other than CEPA or LAD)
- 599 CONTRACT/COMMERCIAL TRANSACTION
- 603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
- 603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
- 605 PERSONAL INJURY
- 610 AUTO NEGLIGENCE – PROPERTY DAMAGE
- 621 UM or UIM CLAIM (includes bodily injury)
- 699 TORT – OTHER

### Track III - 450 days' discovery
- 005 CIVIL RIGHTS
- 301 CONDEMNATION
- 602 ASSAULT AND BATTERY
- 604 MEDICAL MALPRACTICE
- 606 PRODUCT LIABILITY
- 607 PROFESSIONAL MALPRACTICE
- 608 TOXIC TORT
- 609 DEFAMATION
- 616 WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617 INVERSE CONDEMNATION
- 618 LAW AGAINST DISCRIMINATION (LAD) CASES

### Track IV - Active Case Management by Individual Judge / 450 days' discovery
- 156 ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
- 303 MT. LAUREL
- 508 COMPLEX COMMERCIAL
- 513 COMPLEX CONSTRUCTION
- 514 INSURANCE FRAUD
- 620 FALSE CLAIMS ACT
- 701 ACTIONS IN LIEU OF PREROGATIVE WRITS

### Centrally Managed Litigation (Track IV)
- 280 ZELNORM
- 285 STRYKER TRIDENT HIP IMPLANTS
- 288 PRUDENTIAL TORT LITIGATION
- 290 POMPTON LAKES ENVIRONMENTAL LITIGATION
- 291 PELVIC MESH/GYNECARE
- 292 PELVIC MESH/BARD

### Mass Tort (Track IV)
- 248 CIBA GEIGY
- 266 HORMONE REPLACEMENT THERAPY (HRT)
- 271 ACCUTANE
- 274 RISPERDAL/SEROQUEL/ZYPREXA
- 275 ORTHO EVRA
- 277 MAHWAH TOXIC DUMP SITE
- 278 ZOMETA/AREDIA
- 279 GADOLINIUM
- 281 BRISTOL-MYERS SQUIBB ENVIRONMENTAL
- 282 FOSAMAX
- 283 DIGITEK
- 284 NUVARING
- 286 LEVAQUIN
- 287 YAZ/YASMIN/OCELLA
- 601 ASBESTOS

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."

**Please check off each applicable category**   ☐ Putative Class Action   ☐ Title 59

Effective 01/03/2011, CN 10517-English   page 2 of 2