## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| TYLER HODSON and ERIC MCGUIRL, | : | HONORABLE SUSAN D. WIGENTON |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | Civil Action No. 2:11-cv-01540-SDW-MCA |
| | : | |
| AL ROKER ENTERTAINMENT, INC., et al. | : | |
| | : | (Document Filed Electronically) |
| Defendants. | : | |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
## BY AL ROKER ENTERTAINMENT, INC. AND SPIKE TV

Michael Berry
LEVINE SULLIVAN KOCH & SCHULZ, LLP
2112 Walnut Street, Third Floor
Philadelphia, PA 19103
Phone:  (215) 988-9778
Fax:  (215) 988-9750
mberry@lskslaw.com

*Counsel for Defendants Al Roker Entertainment, Inc. and Spike TV*

*Of Counsel:*
Cameron Stracher
LEVINE SULLIVAN KOCH & SCHULZ, LLP
321 West 44th Street, Suite 510
New York, NY 10036
Phone:  (212) 850-6100
Fax:  (212) 850-6299
cstracher@lskslaw.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................. ii

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ............................................................................... 2

ARGUMENT ................................................................................................... 5

I.    PLAINTIFFS' SECTION 1983 CLAIM FAILS AS A MATTER OF
      LAW ................................................................................................... 5

      A.    The Media Defendants Did Not Engage In State Action ...................... 6

      B.    The Media Defendants Cannot Be Held Liable For An Alleged
            Violation Of Section 1983 Under A Respondeat Superior Theory..... 11

      C.    Plaintiffs' Claim Based On The January 29, 2009 Search Is Barred
            By The Statute Of Limitations And The Releases Signed By
            Plaintiff Hodson ................................................................................ 12

II.   PLAINTIFFS' HARASSMENT CLAIM FAILS AS A MATTER OF
      LAW ................................................................................................. 13

      A.    New Jersey Does Not Recognize A Civil Claim For Harassment ........ 13

      B.    Even If New Jersey Permitted Civil Claims For Harassment,
            Plaintiffs' Claim Would Fail As A Matter Of Law............................. 15

III.  PLAINTIFFS' TRESPASS CLAIM FAILS AS A MATTER OF LAW ...... 17

      A.    Plaintiffs Have Failed To Allege Trespass Damages......................... 17

      B.    Plaintiffs' Claim For Trespass On January 29, 2009 Is Barred By
            The Release Signed By Plaintiff Hodson .......................................... 18

IV.   PLAINTIFFS' FALSE IMPRISONMENT CLAIM FAILS AS A
      MATTER OF LAW ............................................................................ 19

      A.    Plaintiffs Have Failed to Allege The Personal Involvement Of The
            Media Defendants In Their "False Imprisonment"............................ 19

      B.    Plaintiffs' Claim of False Imprisonment Arising On January 29,
            2009, Is Barred By The Statute Of Limitations ................................ 20

CONCLUSION ............................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Abbot v. Latshaw,*
   164 F.3d 141 (3d Cir. 1998) ............................................................................ 7

*Ali v. Wasserman,*
   2009 WL 425812 (N.J. Super. App. Div. Feb. 20, 2009) ................................... 18

*Aly v. Garcia,*
   333 N.J. Super. 195 (App. Div. 2000) ..........................................................14, 15

*American Transmission, Inc. v. Channel 7 of Detroit, Inc.,*
   609 N.W.2d 607 (Mich. Ct. App. 2000) ......................................................... 17

*Anderson v. Suiters,*
   499 F.3d 1228 (10th Cir. 2007) ................................................................... 9, 10

*Angstadt v. Midd-West School District,*
   377 F.3d 338 (3d Cir. 2004) ............................................................................ 2

*Anspach v. City of Philadelphia,*
   503 F.3d 256 (3d Cir. 2007) ............................................................................ 2

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009) ................................................................................ 5, 19

*Austin v. Paramount Parks, Inc.,*
   195 F.3d 715 (4th Cir. 1999) ......................................................................... 11

*Baker v. Burlington Cnty. Times,*
   9 Media L. Rep. (BNA) 1967 (D.N.J. June 28, 1983) ......................................... 7

*Baugh v. CBS Inc.,*
   828 F. Supp. 745 (N.D. Cal. 1993) ................................................................ 17

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ...................................................................................... 5, 8

*Bodor v. Horsham Clinic, Inc.,*
   1995 WL 472111 (E.D. Pa. Aug. 8, 1995) ....................................................19, 20

*Brentwood Academy v. Tennessee Secondary School Athletic Association,*
   531 U.S. 288 (2001) ........................................................................................ 6

*Broker's Choice of America, Inc. v. NBC Universal, Inc.*,
    2011 WL 97236 (D. Colo. Jan. 11, 2011) ............................................................ 9

*Brunette v. Humane Society*,
    294 F.3d 1205 (9th Cir. 2002) ................................................................... 8, 10

*Corrente v. Corrente*,
    281 N.J. Super. 243 (App. Div. 1995) ........................................................ 16

*Crusco v. Oakland Care Center, Inc.*,
    305 N.J. Super. 605 (App. Div. 1997) ........................................................ 15

*Darby v. Stender*,
    8 Media L. Rep. (BNA) 1508 (D.N.J. Apr. 13, 1982) ................................. 7

*Dello Russo v. Nagel*,
    358 N.J. Super. 254 (App. Div. 2003) ........................................................ 15

*Desnick v. ABC*,
    44 F.3d 1345 (7th Cir. 1995) ................................................................... 17

*Donato v. Moldow*,
    374 N.J. Super. 475 (App. Div. 2005) ........................................................ 14

*Fisk v. Letterman*,
    401 F. Supp. 2d 362 (S.D.N.Y. 2005) ........................................................ 12

*Fleming v. United Parcel Service, Inc.*,
    255 N.J. Super. 108 (Law Div. 1992) ........................................................ 20

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*,
    194 F.3d 505 (4th Cir. 1999) ................................................................... 17

*Freeman v. State*,
    347 N.J. Super. 11 (App. Div. 2002) .......................................................... 12

*Gayton v. McCoy*,
    593 F.3d 610 (7th Cir. 2010) ................................................................... 11

*Goldberg v. Indel, Inc.*,
    741 F. Supp. 2d 618 (D.N.J. 2010) ............................................................ 2

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*,
    615 F.3d 159 (3d Cir. 2010) .............................................................. 5, 7, 8

*Harvey v. Township of Deptford*,
    402 N.J. Super. 156 (App. Div. 2008) ........................................................ 15

*Hornberger v. American Broadcasting Co.*,
   351 N.J. Super. 577 (App. Div. 2002) .............................................................. 18

*Jalowiecki v. Leuc*,
   182 N.J. Super. 22 (App. Div. 1981) ............................................................... 14

*Jones v. Taibbi*,
   508 F. Supp. 1069 (D. Mass. 1981) ................................................................. 9

*Jordan v. Fox, Rothschild, O'Brien & Frankel*,
   20 F.3d 1250 (3d Cir. 1994) ............................................................................ 6

*Juzwiak v. Doe*,
   415 N.J. Super. 442 (App. Div. 2010) ........................................................... 14

*Kach v. Hose*,
   589 F.3d 626 (3d Cir. 2009) ............................................................................ 7

*Keisling v. Renn*,
   2010 WL 3984876 (M.D. Pa. Sept. 7, 2010) .................................................. 6

*Kruvant v. 12-22 Woodland Avenue Corp.*,
   138 N.J. Super. 1 (Law Div. 1975) ................................................................. 18

*Lassoff v. New Jersey*,
   414 F. Supp. 2d 483 (D.N.J. 2006) ................................................................. 12

*Mark v. Borough of Hatboro*,
   51 F.3d 1137 (3d Cir. 1995) ......................................................................... 6, 7

*McKeesport Hospital v. Accreditation Council for Graduate Medical Education*,
   24 F.3d 519 (3d Cir. 1994) .............................................................................. 6

*McTernan v. City of York*,
   564 F.3d 636 (3d Cir. 2009) ........................................................................... 11

*Medical Laboratory Management Consultants v. ABC*,
   306 F.3d 806 (9th Cir. 2002) .......................................................................... 17

*Medical Society of New Jersey v. AmeriHealth HMO, Inc.*,
   376 N.J. Super. 48 (App. Div. 2005) ........................................................13, 15

*Melnick v. Scott Township*,
   2006 WL 398310 (M.D. Pa. Feb. 16, 2006) ................................................... 20

*Miller v. Clinton County*,
   544 F.3d 542 (3d Cir. 2008) ............................................................................ 2

*Monell v. New York City Department of Social Services*,
    436 U.S. 658 (1978)................................................................................ 11

*Moussavian v. China Ocean Shipping (Group) Co.*,
    2006 WL 3677315 (D.N.J. Dec. 12, 2006) .......................................... 20

*Natale v. Camden Correctional Facility*,
    318 F.3d 575 (3d Cir. 2003)................................................................. 11

*New Jersey Turnpike Authority v. PPG Industries, Inc.*,
    16 F. Supp. 2d 460 (D.N.J. 1998)........................................................ 17

*Nichols v. Hendrix*,
    27 Media L. Rep. (BNA) 1503 (N.D. Ga. Feb. 1, 1999) ...................... 9

*Osback v. Lyndhurst Township*,
    7 N.J. 371 (1951) ............................................................................... 14

*Parker v. Boyer*,
    93 F.3d 445 (8th Cir. 1996).............................................................. 8, 9

*Paternoster v. Shuster*,
    296 N.J. Super. 544 (App. Div. 1997) ................................................ 14

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)................................................................... 5

*Robinson v. City of Philadelphia*,
    30 Media L. Rep. (BNA) 1317 (E.D. Pa. Mar. 29, 2001) ................. 6, 9

*Smith v. Wambaugh*,
    29 F. Supp. 2d 222 (M.D. Pa. 1998)................................................. 6, 7

*State v. Duncan*,
    376 N.J. Super. 253 (App. Div. 2005) ...................................15, 16, 17

*State v. Fuchs*,
    230 N.J. Super. 420 (App. Div. 1989) ................................................ 16

*State v. Hoffman*,
    149 N.J. 564 (1997) ........................................................................... 16

*State v. Zarin*,
    220 N.J. Super. 99 (Law Div. 1987).................................................... 16

*Street v. Corrections Corporation of America*,
    102 F.3d 810 (6th Cir. 1996)............................................................... 11

*Trustees of Local 478 Trucking & Allied Industries Pension Fund v. Pirozzi*,
    198 N.J. Super. 297 (Law. Div. 1983) ............................................................................14, 15

*Watkins v. Weber*,
    546 F. Supp. 2d 182 (D.N.J. 2008) ........................................................................................ 8

*Young v. Suffolk County*,
    705 F. Supp. 2d 183 (E.D.N.Y. 2010) .................................................................................. 8

## STATUTES

42 U.S.C. § 1983 ........................................................................................................................passim

N.J. Stat. Ann. § 2A:14-2.......................................................................................................12, 20

N.J. Stat. Ann. § 2C:33-4 ......................................................................................... 13, 14, 15, 16

## OTHER AUTHORITIES

CJS TRESPASS § 50 .................................................................................................................... 18

Fed. R. Civ. P. 12 ...................................................................................................................... 1, 2

Al Roker Entertainment, Inc., ("Roker") and Spike TV[1] ("Spike") (collectively, the "media defendants") submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss plaintiffs' claims against them for failure to state a cause of action.

## PRELIMINARY STATEMENT

Plaintiffs assert a variety of claims against more than a dozen different defendants, arising out of the arrest of plaintiff Hodson on January 29, 2009, on charges of possessing marijuana with intent to distribute it and illegally possessing a gun, for which he is currently facing trial in New Jersey, and a subsequent search of their home on March 6, 2009, at which time neither plaintiff was arrested. The gist of plaintiffs' claims is that defendants entered their home without permission, held them for questioning, and eventually arrested plaintiff Hodson, then returned five weeks later and questioned them again.

Plaintiffs' claims against the media defendants fail, however, because it is conceded that they in fact *had* permission to enter plaintiffs' home and question them on January 29, 2009. In addition, the media defendants did not, and could not, arrest, seize, or falsely imprison plaintiffs, a dispositive and undisputed fact which plaintiffs attempt to avoid through sloppy pleading and generalized "conspiracy" allegations. Moreover, as private actors, the media defendants cannot be held liable for alleged constitutional violations absent specific allegations that they conspired with government actors to violate plaintiffs' constitutional rights. There are no such allegations in plaintiffs' complaint, and the allegations that are in the complaint establish that there was no conspiracy between the law enforcement defendants, who entered plaintiffs' apartment to investigate criminal activity, and the media defendants, who came to the apartment to film a

---

[1] Spike TV is not a corporate entity capable of being sued. It is a programming service of MTV Networks, which is an indirect wholly-owned subsidiary of Viacom Inc. For purposes of this motion to dismiss only, defendants assume that SPIKE TV is a proper defendant in this matter.

television show.  These same pleading deficiencies doom plaintiffs' common-law claims for

false imprisonment and trespass.  Plaintiffs fare no better in their attempt to create a new private

cause of action under New Jersey law for "harassment."  Finally, because plaintiffs filed their

complaint on January 31, 2011, their claims for conduct that occurred on January 29, 2009,

which are subject to a two-year statute of limitations, are time-barred.

## STATEMENT OF FACTS[2]

    This lawsuit arises out of a documentary television series entitled "DEA" that focuses on

the critical role played by agents of the United States Drug Enforcement Agency as they combat

the drug epidemic and related criminal activity (the "series").  *See* Exhibit 1 (broadcast) attached

to the Affidavit of Michael Berry, dated April 8, 2011 ("Berry Aff.").  The series follows DEA

agents as they interact with each other, and plan and execute arrests of suspects involved in drug

trafficking.  *Id.*  The series is produced by Roker and broadcast on the Spike TV cable network.

*Id.*; *see also* Compl. ¶ 1.

    On January 29, 2009, Roker filmed DEA agents in Jersey City while they were

surveilling the home of plaintiff Hodson, whom the agents suspected of dealing drugs.  *See* Berry

Aff., Ex. 1 (the segment involving plaintiffs begins after approximately 40 minutes).  After

---

[2] This Statement of Facts is taken from plaintiffs' complaint, as well as the broadcast at
issue, court records from plaintiff Hodson's arrest, and the releases signed by plaintiff Hodson,
all of which are properly considered on a motion to dismiss.  *See, e.g.*, *Miller v. Clinton Cnty.*,
544 F.3d 542, 550 (3d Cir. 2008) ("'court may consider an undisputedly authentic document that
a defendant attaches as an exhibit to a motion to dismiss if the plaintiffs claims are based on the
document'") (citation omitted); *Anspach v. City of Phila.*, 503 F.3d 256, 273 n.11 (3d Cir. 2007)
("Courts ruling on Rule 12(b)(6) motions may take judicial notice of public records."); *Angstadt
v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) ("'a document integral to or explicitly
relied upon in the complaint may be considered without converting the motion to dismiss into
one for summary judgment'") (citation omitted).  To the extent plaintiffs' allegations contradict
the broadcast or other records referenced in the complaint, those allegations are ignored.  *See
Goldberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 624 (D.N.J. 2010) (if records relied on in complaint
"contradict the complaint's factual allegations, the documents will control").

waiting in their vehicles, one of the agents got Mr. Hodson to open his door by posing as a UPS driver delivering a package. *Id.* When Hodson opened his front door, the agent indicated he smelled marijuana and asked if he could enter the premises. *Id.* Hodson contends he did not grant consent to the agents to enter and search his home at that point, although he admits he later signed "forms" relating to the entry and search at the request of DEA. Compl. ¶ 33. The agents entered the house where they found approximately six pounds of marijuana and a MAC-10 machine pistol. Berry Aff., Ex. 1. Hodson was charged with, among other things, possessing marijuana with intent to distribute it and illegally possessing a 9mm handgun, and is currently facing trial in New Jersey Superior Court. *See id.* Ex. 3 (Indictment in *State v. Hodson*). Plaintiffs also appear to allege that Hodson's roommate, plaintiff McGuirl, was in the home at that time, although he was not charged with any crime. Compl. ¶ 23.

With plaintiff Hodson's written permission, Roker filmed the surveillance, arrest, and search of his home. Hodson signed a personal release, which provides, in part, that he agreed to "release" and "hold harmless Producer, its legal representatives and assigns, and all persons acting under its permission or authority" for "any and all claims" for "invasion of privacy." Berry Aff., Ex. 2. Plaintiff Hodson also signed a location release which provides, in part:

> Owner/Tenant hereby grants to Producer and its employees, contractors and agents . . . the right to enter the Property [253 Camden Ave., #1, Jersey City, NJ] with personnel and equipment for the purpose of recording, filming, taping and/or photographig in connection with the Project

*Id.* Hodson admits he signed both releases, subject only to the provision that his face, body, and voice be obscured in the series. Compl. ¶ 21.

Plaintiffs further contend that, on March 6, 2010, defendants DEA and Jersey City Police Department, along with the media defendants, returned to their home, handcuffed plaintiff Hodson and ordered plaintiff McGuirl to "stay in the apartment and told him to sit down and that

he could not leave." *Id.* ¶ 35.  Plaintiffs' allege that their home was searched again, and that "Defendants' film crew and law enforcement were in Plaintiff's [sic] apartment for approximately 10-15 minutes interrogating Plaintiff while the filming continued." *Id.* ¶ 40. Neither plaintiff was arrested on that occasion.

On March 17, 2009, Spike broadcast the episode of DEA that included footage of plaintiff Hodson's arrest on January 29, 2009.  *See* Berry Aff., Ex. 1.  During the roughly five minute segment involving the search of plaintiffs' apartment, Hodson was blurred, and his voice and image were obscured.  Contrary to plaintiffs' allegation, *see* Compl. ¶ 48, the broadcast itself demonstrates that plaintiff McGuirl's image was also blurred as he sat, silently, on the couch. *See* Berry Aff., Ex. 1.

On January 31, 2011, plaintiffs brought this lawsuit against the media defendants as well as the City of Jersey City, the Jersey City Police Department, the United States Drug Enforcement Agency, two law enforcement officials (collectively, the "law enforcement defendants"), and a host of John Doe defendants.  As against the media defendants, plaintiffs assert claims for violation of 42 U.S.C. § 1983 (Count One), trespass and "harassment" (Count Two), and false imprisonment (Count Three).  *See* Compl. ¶¶ 59, 61, 63.  Plaintiffs also assert separate claims against the law enforcement defendants for assault, unlawful detention, and "a tort." *Id.* ¶¶ 65, 67, 69.  To date, the law enforcement defendants have not been served.  The media defendants timely removed this case to federal court on March 18, 2011, and now move to dismiss all claims against them.

**ARGUMENT**

Plaintiffs can survive a motion to dismiss only if they "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and only if their factual allegations show "more than a sheer possibility that [defendants have] acted unlawfully," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  In the Third Circuit, following *Twombly*, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 563 n.8) (alteration in original).  In other words, "there must be some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation."  *Id.* at 234-35; *see Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010).

In this case, plaintiffs' claims against the media defendants for violations of their constitutional rights under 42 U.S.C. § 1983, for "harassment" and trespass, and for false imprisonment fail because they have failed to plead plausible facts that would support such claims.  Accordingly, their complaint against the media defendants should be dismissed.

**I.    PLAINTIFFS' SECTION 1983 CLAIM FAILS AS A MATTER OF LAW.**

Plaintiffs purport to state a claim under 42 U.S.C. § 1983 based on violations of their Fourth, Fifth, and Sixth Amendment rights when defendants allegedly entered their home without permission, seized their property, and interrogated them.  *See, e.g.*, Compl. ¶¶ 6-11, 15, 18, 45, 46, 52, 55, 59.  This claim against the media defendants, however, fails as a matter of law for three reasons:  (1) the media defendants are not state actors and did not engage in state action; (2) plaintiffs cannot recover against the media defendants based on a theory of respondeat

superior; and (3) to the extent the claim arises from the incident on January 29, 2009, it is barred

by the statute of limitations and the releases signed by plaintiff Hodson.

A.    **The Media Defendants Did Not Engage In State Action.**

To state a claim under Section 1983, a plaintiff must demonstrate that the alleged

constitutional violation "'was committed by a person acting under color of state law.'"  *Mark v.*

*Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995) (citation omitted).  The Supreme Court

has instructed that private parties, like Roker and Spike, act under color of state law "only if

there is such a 'close nexus between the State and the challenged action' that seemingly private

behavior 'may be fairly treated as that of the State itself.'"  *Brentwood Acad. v. Tenn. Secondary*

*Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (citation omitted); *see also McKeesport Hosp. v.*

*Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 524 (3d Cir. 1994) ("'the question

is whether the state was sufficiently involved to treat [a private party's] conduct as state action'")

(citation omitted).  In applying this principle, the Third Circuit has warned against a "too facile

extension of section 1983 to private parties," *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20

F.3d 1250, 1277 (3d Cir. 1994).  As a result, courts in this Circuit have routinely dismissed

Section 1983 claims against media defendants.  *See, e.g.*, *Keisling v. Renn*, 2010 WL 3984876,

*10 (M.D. Pa. Sept. 7, 2010) (dismissing Section 1983 claim against newspapers because

plaintiff "failed to allege facts that plausibly lead to a reasonable inference that defendants . . .

acted under color of law"); *Robinson v. City of Phila.*, 30 Media L. Rep. (BNA) 1317, 1318,

1320 (E.D. Pa. Mar. 29, 2001) (dismissing Section 1983 claim against television reporter

because he did not act engage in state action), *aff'd*, 80 F. App'x 288 (3d Cir. 2003); *Smith v.*

*Wambaugh*, 29 F. Supp. 2d 222, 228 (M.D. Pa. 1998) (dismissing Section 1983 claim because

author of book had not acted jointly with state officials to violate plaintiff's constitutional rights),

*aff'd*, 189 F.3d 464 (3d Cir. 1999) (table decision); *Baker v. Burlington Cnty. Times*, 9 Media L.

Rep. (BNA) 1967, 1967 (D.N.J. June 28, 1983) (dismissing claim because newspaper not "acting

under color of state law"); *Darby v. Stender*, 8 Media L. Rep. (BNA) 1508, 1509 (D.N.J. Apr.

13, 1982) (dismissing Section 1983 claim against newspaper reporter because his actions were

not "taken under color of state law").  (True and correct copies of cases published in the Media

Law Reporter are attached as Exhibit 4 to the Berry Aff.).

     The Supreme Court has articulated "three discrete tests to determine whether there has

been state action" when a private party is sued under Section 1983.  *See Mark*, 51 F.3d at 1142

(citing cases).  Only one of those tests is even conceivably implicated here:  Whether the private

party acted "'in concert with state officials.'"  *Id.* (citation omitted); *see* Compl. ¶¶ 21, 53

(alleging that defendants "act[ed] in concert" and "engaged in a conspiracy to . . . violate

Plaintiff's rights").[3]  Under this test, plaintiffs must establish that the media defendants "willfully

participate[d] in a joint conspiracy with state officials to deprive [them] of a constitutional right."

*Abbot v. Latshaw*, 164 F.3d 141, 147-48 (3d Cir. 1998) (citation omitted).  When assessing

whether a plaintiff has asserted a viable Section 1983 claim against a private party, courts "do

not consider any conclusory allegations that there was a 'corrupt conspiracy,' 'an agreement,' or

'an understanding in place between'" the defendants.  *Great W. Mining & Mineral Co.*, 615 F.3d

at 178.  Rather, a Section 1983 plaintiff must allege facts sufficient to show "the approximate

time when the agreement was made, the specific parties to the agreement . . . , the period of the

---

[3] The other two tests are "whether 'the private entity has exercised powers that are traditionally the *exclusive* prerogative of the state,'" *Mark*, 51 F.3d at 1142 (citation omitted), and whether "'the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity,'" such as when the state "exercise[s] control" over the private party or provides "significant encouragement" to the party when it violates the plaintiff's constitutional rights itself, *Kach v. Hose*, 589 F.3d 626, 646, 648, 649 (3d Cir. 2009) (citation omitted).

conspiracy, [and] the object of the conspiracy;" these facts must be alleged in more than "general terms." *Id.* at 179.

In this case, plaintiffs have not alleged any of these requisite facts.  Their complaint includes "a bare assertion of conspiracy" that, at best, alleges defendants engaged in "parallel conduct," which fails to state a viable claim as a matter of law.  *Twombly*, 550 U.S. at 556-57 ("Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); *accord Watkins v. Weber*, 546 F. Supp. 2d 182, 187 (D.N.J. 2008) (dismissing Section 1983 claim because, "'[a]lthough Plaintiff utlize[d] the word 'conspired,' Plaintiff does not provide the facts necessary to demonstrate any type of agreement or understanding" between the private party and the state "to deprive Plaintiff of his constitutional rights").  In sum, plaintiffs allege that a film crew entered their apartment with the law enforcement defendants, and then the law enforcement defendants allegedly engaged in illegal searches, seizures, and interrogations, while the media defendants filmed their actions.  *See, e.g.*, Compl. ¶¶ 18-20, 37, 40.  These allegations are legally insufficient to establish a conspiracy.  As numerous courts have held, the press does not engage in state action by being "simultaneously present" with law enforcement officials at an illegal search.  *E.g.*, *Brunette v. Humane Soc'y*, 294 F.3d 1205, 1212 (9th Cir. 2002) (affirming dismissal of Section 1983 claim and explaining that a "wink and a nod understanding" between reporter and state actor did "not amount to an agreement or a conspiracy to violate [plaintiff's] rights in particular" when plaintiffs' property was searched illegally).[4]

---

[4] *See also, e.g.*, *Parker v. Boyer*, 93 F.3d 445, 448 (8th Cir. 1996) (no Section 1983 claim against television station arising from reporters entrance into plaintiffs' home and filming during execution of a search warrant because, *inter alia*, the station "acted independently of the police in deciding to enter the house and videotape the events there"); *Young v. Suffolk County*, 705 F. Supp. 2d 183, 201 (E.D.N.Y. 2010) (dismissing Section 1983 claim against media defendants

Indeed, according to plaintiffs, the media defendants came to the apartment to film the search "for a cable television show named DEA" to be broadcast on national television, Compl. ¶¶ 1, 21, while the law enforcement defendants were there to investigate criminal activity, *see, e.g.*, *id.* ¶¶ 4, 30 (stating that the police and DEA "acquired information about Plaintiff" prior to the search and "charged [him] with crimes" after the search). These separate goals and independent objectives underscore that the media defendants were not acting jointly with the law enforcement defendants for the purpose of violating plaintiffs' constitutional rights. *See Anderson v. Suiters*, 499 F.3d 1228, 1233 (10th Cir. 2007) (affirming dismissal of Section 1983 claim based on alleged unconstitutional conspiracy because "the parties had their own, separate goals: [police officer] wanted to appear on camera, and the media defendants wanted exclusive access to the investigation"); *Parker*, 93 F.3d at 448 ("The television station was there for reasons of its own and was engaged in a mission entirely distinct from the one that brought the police to the house.").[5]

---

who entered residence with police executing a warrant because, *inter alia*, media did not assist in "executing the search"); *Robinson*, 30 Media L. Rep. at 1318, 1320 (dismissing Section 1983 claim against television reporter who accompanied police on, and filmed, warrantless search of plaintiffs' business without plaintiffs' consent); *Nichols v. Hendrix*, 27 Media L. Rep. (BNA) 1503, 1505 (N.D. Ga. Feb. 1, 1999) (dismissing Section 1983 claim against television stations that joined police and videotaped raid of plaintiffs' house); *Jones v. Taibbi*, 508 F. Supp. 1069, 1073 (D. Mass. 1981) (dismissing Section 1983 claim against television reporter who accompanied police in arresting plaintiff).

[5] *See also, e.g.*, *Broker's Choice of Am., Inc. v. NBC Universal, Inc.*, 2011 WL 97236, *11 (D. Colo. Jan. 11, 2011) (dismissing Section 1983 claim based on *Dateline* undercover investigation because NBC and state officials had "their own separate goals" and the officials were not "involved in the production of the Report"); *Nichols*, 27 Media L. Rep. at 1505 (dismissing Section 1983 claim because television stations that filmed raid at plaintiffs' house "were there solely for their own purposes"); *Jones*, 508 F. Supp. at 1073 (dismissing Section 1983 claim against television reporter who accompanied police in arresting plaintiff because of "disparate" motives of reporter and police).

The complaint's only specific allegation that arguably speaks to whether the law enforcement and media defendants were "acting in concert" is the claim that a police officer "assur[ed]" one of the plaintiffs that, if he signed the film crew's release, then his "face, body, and voice would be blurred" in the television broadcast.  Compl. ¶ 21.  This allegation is not sufficient to establish that the media defendants conspired to violate plaintiffs' constitutional rights.  In fact, it has nothing to do with the allegedly unconstitutional searches, seizures, or interrogations on which plaintiffs' claim is based, and is – on its face – entirely separate from those acts.  The Tenth Circuit considered – and rejected – a similar conspiracy theory in *Anderson v. Suiters*, 499 F.3d 1228 (10th Cir. 2007).  In that case, a rape victim attempted to state a claim under Section 1983 against a police officer and television reporter after the officer allowed a reporter to film videotape evidence of the plaintiff being raped.  *See id.* at 1231.  The plaintiff argued that evidence of a conspiracy could be found in the fact that the officer called the plaintiff to encourage her to be interviewed by the reporter.  *See id.* at 1234.  The Tenth Circuit rejected this contention, explaining that "[w]hile this fact may show that [the police officer] and the media defendants acted jointly to secure [plaintiff's] cooperation for an interview, it does not show joint action to violate [plaintiff's] constitutional rights by airing sexually explicit portions of a videotape." *Id.*

At bottom, the Complaint alleges only that the media defendants' film crew "was simply a private spectator, photographing and videotaping the search independently and for its own purposes." *Brunette*, 294 F.3d at 1207.  Plaintiffs therefore cannot state a claim that the media defendants willfully participated in a conspiracy to violate their constitutional rights as a matter of law.

**B.     The Media Defendants Cannot Be Held Liable For An Alleged
        <u>Violation Of Section 1983 Under A Respondeat Superior Theory.</u>**

It is well-established that a plaintiff cannot state a viable Section 1983 claim against a

government agency based on the actions of its employees under a theory of respondeat superior.

*See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Rather, an agency can

only be held liable under Section 1983 if "'the alleged constitutional transgression implements or

executes a policy, regulation or decision officially adopted by the governing body or informally

adopted by custom.'"  *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009) (citation

omitted).  This same principle applies to Section 1983 claims against private corporations.  *See*

*Natale v. Camden Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (explaining that Prison

Health Services, Inc. "cannot be held responsible for the acts of its employees under a theory of

respondeat superior or vicarious liability" and can only be held liable for a custom or policy that

caused a constitutional violation); *Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010) (private

corporation cannot be held "'vicariously liable under § 1983 for its employees' deprivations of

others' civil rights'") (citation omitted); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th

Cir. 1999) ("a private corporation is liable under § 1983 *only* when an official policy or custom

of the corporation causes the alleged depravation of federal rights"); *Street v. Corrs. Corp. of*

*Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every

circuit to consider the issue has extended the holding to private corporations as well.").

To state a claim against a corporation under Section 1983, plaintiffs must satisfy the

"rigorous standards of culpability and causation" governing claims against agencies by

(1) "identify[ing] a custom or policy," (2) "specify[ing] exactly what that custom or policy was,"

*McTernan*, 564 F.3d at 658, and (3) alleging that the custom or policy "caused the constitutional

violation." *Natale*, 318 F.3d at 583.  In this case, plaintiffs have merely alleged that the media

defendants should be held liable based on the conduct of unidentified members of a film crew and have not specified any policy or custom of the media defendants, let alone a policy or custom that violated plaintiffs' constitutional rights. *See, e.g.*, Compl. ¶¶ 19, 40. Indeed, plaintiffs do not even allege that defendants "seized" them or their property. To the contrary, they allege it was the law enforcement defendants who handcuffed them, and the law enforcement defendants who allegedly removed their property. *See id.* ¶¶ 14, 17, 23-27. Consequently, plaintiffs' Section 1983 claim against the media defendants fails as a matter of law for this reason as well. *See, e.g.*, *Lassoff v. New Jersey*, 414 F. Supp. 2d 483, 494 (D.N.J. 2006) (dismissing claim against corporation because "private corporations may not be held vicariously liable" under Section 1983); *Fisk v. Letterman*, 401 F. Supp. 2d 362, 375 (S.D.N.Y. 2005) (dismissing Section 1983 claim against media companies because plaintiff did not allege that they had "a policy of violating individuals' civil rights").

### C.  Plaintiffs' Claim Based On The January 29, 2009 Search Is Barred By The Statute Of Limitations And The Releases Signed By Plaintiff Hodson.

Claims arising under 42 U.S.C. § 1983 are governed by New Jersey's two-year statute of limitations for personal injury torts. *See* N.J. Stat. Ann. § 2A:14-2. The claim accrues when the governmental action about which plaintiff complains occurs. *Freeman v. State*, 347 N.J. Super. 11, 22 (App. Div. 2002). Here, plaintiffs acknowledge that their claim for constitutional violations is based primarily on events that took place on January 29, 2009. Compl. ¶¶ 1, 3-5. Plaintiffs filed their complaint on January 31, 2011. As a result, their claim for civil rights violations arising from any actions on January 29, 2009, are time-barred. *Freeman*, 347 N.J. Super at 22.

Even if plaintiffs' Section 1983 claim for actions that occurred on January 29 was not time-barred, however, their claim would fail for the entirely independent reason that plaintiff

Hodson signed *both* a personal release and a location release on that date.  The gravamen of plaintiffs' Section 1983 claim is that defendants invaded their privacy by entering their home without permission, seizing them and their property, and interrogating them.  *See, e.g.*, Compl. ¶¶ 6-11, 15, 18, 45, 46, 52, 55, 59.  Yet Hodson did, in fact, give the media defendants permission to enter plaintiffs' apartment *and* to film him, subject only to being blurred in the episode, which he was.  Berry Aff., Ex. 1 (broadcast), Ex. 2 (releases).  He also expressly released invasion of privacy claims like the one he is now attempting to advance.  Defendant McGuirl was also blurred in the episode, and does not speak on camera.  On these separate grounds, therefore, plaintiffs have failed to state a claim for violations of their civil rights against the media defendants for actions occurring on January 29, 2009.

## II.     PLAINTIFFS' HARASSMENT CLAIM FAILS AS A MATTER OF LAW.

New Jersey does not recognize a civil cause of action for harassment.  Plaintiffs' claim for "harassment," therefore, must be dismissed as a matter of law.  Even if this Court were to recognize a civil tort for harassment based on New Jersey's criminal harassment statute, however, plaintiffs have failed to plead the necessary elements of such a claim.

### A.     New Jersey Does Not Recognize A Civil Claim For Harassment.

In New Jersey, there is no common-law tort of harassment.  There is, however, a criminal harassment statute that establishes a petty disorderly persons offense for certain conduct.  *See* N.J. Stat. Ann. § 2C:33-4.  That statute, on its face, does not provide a civil remedy.  Where the Legislature has not expressly provided a statutory right of action, New Jersey courts have been reluctant to find one.  *See Med. Soc'y of N.J. v. AmeriHealth HMO, Inc.*, 376 N.J. Super. 48, 58 (App. Div. 2005) (New Jersey "courts 'have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action.'") (citation omitted);

*Trustees of Local 478 Trucking & Allied Indus. Pension Fund v. Pirozzi*, 198 N.J. Super. 297,

308 (Law. Div. 1983) (citing, *inter alia*, *Jalowiecki v. Leuc*, 182 N.J. Super. 22 (App. Div. 1981),

and *Osback v. Lyndhurst Twp.*, 7 N.J. 371 (1951)) (noting that the state's courts "are generally

loathe to imply a civil remedy from a penal statute.").

      Not surprisingly, therefore, no New Jersey court has permitted a plaintiff to pursue a civil

cause of action for damages under the harassment statute.  *See Juzwiak v. Doe*, 415 N.J. Super.

442, 454 (App. Div. 2010) ("question[ing] whether there is a civil cause of action for damages

for harassment" and dismissing claim on other grounds); *Donato v. Moldow*, 374 N.J. Super.

475, 481 n.2 (App. Div. 2005) (recognizing that trial judge granted motion to dismiss because

"New Jersey does not recognize a private cause of action for damages for the tort of

'harassment'" and affirming on alternative grounds); *Aly v. Garcia*, 333 N.J. Super. 195, 203

(App. Div. 2000) ("leav[ing] for another day the decision as to whether N.J.S.A. § 2C:33-4

creates a civil cause of action").[6]  Although a criminal statute can give rise to a civil claim

"under certain circumstances," here there is no evidence that the Legislature intended to create a

private cause of action or that such a cause of action would be consistent with the underlying

_____

      [6] In one case, a New Jersey court allowed a civil harassment claim to proceed.  *See Paternoster v. Shuster*, 296 N.J. Super. 544, 560 (App. Div. 1997) (permitting counterclaim under harassment statute based on allegations that plaintiff made false reports to police and repeatedly sent her anonymous cards).  As a subsequent Appellate Division decision explained, however, the plaintiff in that case sought injunctive relief, and the court "did not decide whether a cause of action for harassment gives rise to a claim for damages, as opposed to a claim for injunctive relief."  *Aly*, 333 N.J. Super. at 203 (noting distinction between "cases where an individual seeks to enjoin another from violating the statute and cases in which a person seeks to recover monetary damages for the violation"); *see also Pirozzi*, 198 N.J. Super. at 314 ("The right of an individual to seek to *enjoin* another from violating a legislative decree embodied in a statute or ordinance . . . is far more compelling and far different from allowing a right to seek *personal civil monetary damage* for the violation.").  Indeed, in *Paternoster*, the court did not specifically address whether the harassment statute gives rise to a private cause of action, apparently because neither party raised the issue.  In this case, plaintiffs solely seek compensatory damages, *see* Compl. ¶¶ 60-61, and, as the Appellate Division explained in *Aly*, the *Paternoster* decision does not provide support for the viability of such a claim.

purposes of the legislative scheme.  *Aly*, 333 N.J. Super. at 203; *accord Harvey v. Twp. of Deptford*, 402 N.J. Super. 156, 164 (App. Div. 2008).  In fact, the Legislature specifically enacted the law to create a criminal, not civil, remedy for harassing conduct.  *See State v. Duncan*, 376 N.J. Super. 253, 260 (App. Div. 2005) (harassment law was "enacted 'to make criminal, private annoyances that are not entitled to constitutional protection'") (citation omitted).  If the Court permitted plaintiffs to assert a harassment claim against the media defendants, it would "impose a civil obligation where the Legislature saw fit to only impose penal sanctions."  *Pirozzi*, 198 N.J. Super. at 313 ("Certainly, if the Legislature had desired to implement a civil counterpart [to the criminal statute], it could have done so."); *see also Crusco v. Oakland Care Ctr., Inc.*, 305 N.J. Super. 605, 616 (App. Div. 1997) ("private litigation is clearly no part of the mechanisms enacted").

Accordingly, plaintiffs' attempt to assert a civil cause of action for harassment under New Jersey law should be rejected out of hand.  *See Dello Russo v. Nagel*, 358 N.J. Super. 254, 267 (App. Div. 2003) (ruling that "there is no civil cause of action for theft by extortion and the criminal statute does not provide a civil remedy"); *see also Harvey*, 402 N.J. Super. at 164-65 (ruling no private cause of action under statute that does not include a provision for a damages remedy); *Med. Soc'y of N.J.*, 376 N.J. Super. at 59 (no private cause of action where statute includes a civil penalty provision that the Commissioner of Banking and Insurance can enforce).

**B.    Even If New Jersey Permitted Civil Claims For Harassment, Plaintiffs' Claim Would Fail As A Matter Of Law.**

Even if New Jersey were to recognize a civil tort of harassment, plaintiffs could not satisfy its elements.  Under the criminal harassment statute, "a person commits a petty disorderly persons offense if, with purpose to harass another, he engages in any . . . course of alarming conduct or repeatedly committed acts with purpose to alarm or seriously annoy such other

person."  N.J. Stat. Ann. § 2C:33-4(c).[7]  Here, the two incidents alleged in the complaint do not

reflect a course of conduct.  *See State v. Hoffman*, 149 N.J. 564, 580-81 (1997) ("course of

conduct" requires multiple episodes to satisfy statute).  Even if these two incidents could be

construed as a course of conduct, however, the media defendants must have intended to harass

plaintiffs, *Duncan*, 376 N.J. Super. at 260, and acted with the "purpose to alarm or seriously

annoy an intended victim." *Hoffman*, 149 N.J. at 580.  As New Jersey courts have repeatedly

emphasized, absent that specific intent and purpose, a defendant does not violate the law.  *See*

*Duncan*, 376 N.J. Super. at 262 (prosecution for harassment not legally viable if "defendant did

not intend to harass anyone"); *Corrente v. Corrente*, 281 N.J. Super. 243, 249 (App. Div. 1995)

(no violation where no "intent to harass").

　　　In this case, plaintiffs have not alleged – and cannot allege – that the media defendants

intended to harass them, or that they acted for the purpose of alarming or seriously annoying

them.  To the contrary, the complaint is explicit that the media defendants went to plaintiffs

apartment to film footage for a cable television show, and had permission to be there.  *See, e.g.*,

Compl. ¶¶ 1, 21; Berry Aff., Ex. 2 (releases).  Thus, the media defendants did not act with the

requisite intent or purpose and, consequently, plaintiffs could not state a harassment claim

against them as a matter of law.  *See State v. Fuchs*, 230 N.J. Super. 420, 428 (App. Div. 1989)

(holding that "peeping tom" did not violate statute because he did not have "a 'conscious

objective'" to alarm or annoy people); *State v. Zarin*, 220 N.J. Super. 99, 101 (Law Div. 1987)

(ruling that "peeping Tom" did not break the law because his purpose was "to observe his

---

[7] Neither of the other two sections of the statute could conceivably apply to this case.
Section (a) requires communications made "anonymously or at extremely inconvenient hours,"
and section (b) requires "striking, kicking, shoving, or other offensive touching."  § 2C:33-4(a),
(b).

'victims,'" not to harass them); *Duncan*, 376 N.J. Super. at 256 ("impolite and rude behavior" does not satisfy element requiring "a purpose to harass another").

## III.   PLAINTIFFS' TRESPASS CLAIM FAILS AS A MATTER OF LAW.

Plaintiffs' trespass claim fails because they have alleged no damages to their property that are recoverable in trespass, and because they have failed to plead any other damages that might be recoverable for that tort.  In addition, their trespass claim arising from the media defendants' actions on January 29, 2009, fails for the independent reason that any such claim is barred by the location release signed by plaintiff Hodson.

### A.   Plaintiffs Have Failed To Allege Trespass Damages.

A trespass is the unauthorized entry onto the property of another.  *N.J. Tpk. Auth. v. PPG Indus., Inc.*, 16 F. Supp. 2d 460, 478 (D.N.J. 1998) (applying New Jersey law).  When trespass claims have been asserted against the media as a result of newsgathering activities, courts have dismissed them when the injury alleged does not arise from any damage to property.  *See, e.g.*, *Desnick v. ABC*, 44 F.3d 1345, 1351 (7th Cir. 1995); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 518 (4th Cir. 1999); *Am. Transmission, Inc. v. Channel 7 of Detroit, Inc.*, 609 N.W.2d 607 (Mich. Ct. App. 2000); *Baugh v. CBS Inc.*, 828 F. Supp. 745 (N.D. Cal. 1993).  In *Desnick*, for example, the Seventh Circuit dismissed a trespass claim against a television network where "the entry was not invasive in the sense of infringing the kind of interest of the plaintiffs that the law of trespass protects; it was not an interference with the ownership or possession of land."  44 F.3d at 1352; *see also Med. Lab. Mgmt. Consultants v. ABC*, 306 F.3d 806, 820 (9th Cir. 2002) (holding that even if media defendants had committed a trespass by entering plaintiff's offices, claim must be dismissed because any such trespass "was not the legal cause" of the damages sought, which stemmed from the subsequent broadcast).

Similarly, in *Hornberger v. American Broadcasting Co.*, 351 N.J. Super. 577 (App. Div. 2002), the Appellate Division affirmed the dismissal of a fraud claim where plaintiff's damages did not arise as a result of defendants' allegedly fraudulent conduct during its newsgathering activities, but arose as a result of emotional harm plaintiffs' claimed to have suffered.  *Id.*. at 597.  So, too, here.  Plaintiffs have claimed no property damage arising from the media defendants' alleged trespass – i.e., they have not claimed their home or possessions were damaged.  Accordingly, they should not be permitted to pursue a trespass claim that seeks compensation for injury they have not incurred.

Although New Jersey law permits the recovery of nominal damages for trespass, *see Kruvant v. 12-22 Woodland Avenue Corp.,* 138 N.J. Super. 1, 24 (Law Div. 1975), *aff'd*, 150 N.J. Super. 503 (App. Div. 1977), plaintiffs have not sought such damages in this case.  *See* Compl. (Second Count).  Therefore, on this ground as well, plaintiffs' claim for trespass should be dismissed.  *See Ali v. Wasserman*, 2009 WL 425812, *3 (N.J. Super. App. Div. Feb. 20, 2009) (dismissing trespass claim where plaintiff did not assert any claim for damages for trespass, including any claim for nominal damages) (attached in Exhibit 4 to Berry Aff.).  In short, plaintiffs' failure to plead damages arising from or connected to the alleged trespass necessitates the dismissal of that claim.

### B.    Plaintiffs' Claim For Trespass On January 29, 2009 Is Barred By The Release Signed By Plaintiff Hodson.

Even if plaintiffs had otherwise stated a valid claim for trespass, to the extent that claim is based on events that occurred on January 29, 2009, it is barred by the location release signed by plaintiff Hodson that gave the media defendants permission to enter plaintiffs' home on that date.  *See* Berry Aff., Ex. 2.  It is black letter law that consent by a person in legal possession of property is a defense to a trespass claim.  *See* CJS TRESPASS § 50 ("A license from one of several

18

tenants in common is a good defense in an action of trespass brought jointly by all of them."). Plaintiffs acknowledge that Hodson freely signed the release, in exchange for the promise that his voice, image, and body would be obscured in any subsequent broadcast, Compl. ¶ 21, which they were, *see* Berry Aff., Ex. 1.  Therefore, plaintiffs cannot state a claim for trespass against the media defendants for the events occurring on January 29, 2009.

## IV.   PLAINTIFFS' FALSE IMPRISONMENT CLAIM FAILS AS A MATTER OF LAW.

Plaintiffs' claim for false imprisonment must be dismissed because they fail to allege the specific involvement of any of the media defendants in the alleged conduct.  In addition, their false imprisonment claim arising from events on January 29, 2009, is time-barred.

### A.   Plaintiffs' Have Failed to Allege The Personal Involvement Of The Media Defendants In Their "False Imprisonment."

The complaint generically alleges that on January 29, 2009, "Defendants handcuffed Plaintiff," "ke[pt] Plaintiff restrained," "required [Plaintiff] to lay on his stomach," "removed [Plaintiff] from his apartment," drove him "to a police facility" where he was "charged with crimes," and finally took him "to the county correctional facility."  Compl. ¶¶ 17, 23, 31.  Then, according to the complaint, on March 6, 2009, "Defendants . . . handcuffed Plaintiff" and "took him in custody."  *Id.* ¶ 37.  These allegations plainly are directed at the law enforcement defendants and, at the very least, fail to specify which defendants did what to whom.  *See Bodor v. Horsham Clinic, Inc.*, 1995 WL 472111, *4 (E.D. Pa. Aug. 8, 1995) (dismissing false imprisonment claims where "general allegations fail to provide the specific defendants at issue with 'fair notice' of their alleged misconduct"); *see also Ashcroft*, 129 S. Ct. at 1950 (determining whether claim is plausible, and not merely possible, is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense").  In fact, it is

not even clear – given plaintiffs' interchangeable use of the singular and plural – which plaintiff allegedly suffered what treatment at the hands of which defendant.  For these reasons, plaintiffs' false imprisonment claims should be dismissed.

Plaintiffs' failure to identify how each defendant was involved in and responsible for the misconduct they allege dooms their claims for false imprisonment.  *See Melnick v. Scott Twp.*, 2006 WL 398310, at *3 (M.D. Pa. Feb. 16, 2006) (dismissing false imprisonment claim where plaintiff failed to allege the personal involvement of the defendants in his arrest or detention); *Moussavian v. China Ocean Shipping (Group) Co.*, 2006 WL 3677315, *2 (D.N.J. Dec. 12, 2006) (dismissing false imprisonment claim where "Plaintiff refers to Defendants in the collective" and fails to state "which exact Defendants are liable, nor the basis for liability with respect to each Defendant"); *Bodor*, 1995 WL 472111, at *4 (dismissing complaint where "plaintiff relies upon the term 'defendants' to link all eleven original defendants to conduct which plaintiff alleges amounted to . . . false imprisonment").  Indeed, as pleaded, plaintiffs' claim for false imprisonment fails to allege *any* misconduct by the media defendants.  It should, therefore, be dismissed.  *Bodor,* 1995 WL 472111, at *4 (dismissing false imprisonment claim where allegations were vague and conclusory, and therefore failed to allege any misconduct by specific defendants).

> **B.      Plaintiffs' Claim of False Imprisonment Arising On
>          January 29, 2009, Is Barred By The Statute Of Limitations.**

Claims for false imprisonment are governed by New Jersey's two-year statute of limitations.  *See* N.J. Stat. Ann. § 2a:14-2; *Fleming v. United Parcel Serv., Inc.*, 255 N.J. Super. 108, 155 (Law Div. 1992).  Plaintiffs' claim for false imprisonment, filed on January 31, 2011 and based on the media defendants' actions on January 29, 2009, is, therefore, time-barred.

## CONCLUSION

For the foregoing reasons, plaintiffs' claims against the media defendants should be dismissed with prejudice in their entirety, and the media defendants should be awarded such other and further relief as this Court deems appropriate.

Dated: April 8, 2011

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

By:  ___/s/ Michael Berry_____
     Michael Berry

2112 Walnut Street, Third Floor
Philadelphia, PA 19103
Phone:  (215) 988-9778
Fax:  (215) 988-9750
mberry@lskslaw.com

*Counsel for Defendants Al Roker Entertainment, Inc. and Spike TV*

*Of Counsel:*

Cameron Stracher
LEVINE SULLIVAN KOCH & SCHULZ, LLP
321 West 44th Street, Suite 510
New York, NY 10036
Phone:  (212) 850-6100
Fax:  (212) 850-6299
cstracher@lskslaw.com